VAN E. PETERSON, RECEIVER OF FARMERS STATE BANK OF CULBERTSON, APPELLEE, V. MARY S. WINKELMANN, APPELLANT.

FILED JUNE 25, 1926. No. 25091.

1. Appeal: TRIAL DE NOVO. When an action in equity is appealed, wherein review of some or all of the findings of fact of the district court is asked by the appellant, it is the duty of this court to try the issues *de novo* and reach an independent conclusion without reference to the findings of the district court. Section 9150, Comp. St. 1922. And when the evidence on material questions of fact is in irreconcilable conflict, this court will in determining the weight of the evidence consider the fact that the trial court observed the witnesses and their manner of testifying. *Magill v. Magill, ante,* p. 636.

2. ———: SUFFICIENCY OF EVIDENCE. Upon examination of the entire record, and upon trial *de novo*, we find that the evidence supports the judgment.

APPEAL from the district court for Hitchcock county: CHARLES E. ELDRED, JUDGE. *Affirmed.*

*J. F. Ratcliff* and *Scott & Scott,* for appellant.

*Butler & James, contra.*

Heard before MORRISSEY, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

DEAN, J.

The Farmers State Bank of Culbertson, Nebraska, hereinafter called the bank, became financially embarrassed and was taken over by Van E. Peterson, secretary of the guaranty fund commission. December 10, 1924, Peterson, as receiver of the bank, began an action in the district court, in and for Hitchcock county, to close up the bank's affairs.

November 8, 1923, Henry W. Winkelmann, cashier of the bank, admitted the shortage of $23,480.04 in his account as cashier. This is disclosed by the following instrument which is signed by Winkelmann:

"Whereas, an examination of the affairs of the Farmers State Bank of Culbertson, Nebraska, has disclosed a shortage of $23,480.04 in the assets of said bank; and

"Whereas, until the day of the date hereof the undersigned, H. W. Winkelmann, has been cashier of said bank; and

"Whereas, the said H. W. Winkelmann acknowledges said shortage and has promised and agreed to and with the said bank to pay and make good to said bank a portion thereof, amounting to the sum of $10,000; and

"Whereas, the said bank has agreed to accept the note of the said H. W. Winkelmann in the sum of $10,000 as evidence thereof, and certain assignments, conveyances and payments, herein specified, as security for the payment and in payment of said portion of such shortage, such assignments, conveyances and payments being described as follows:

"A warranty deed to lots 244, 245 and 246 in the town of Culbertson, Hitchcock county, Nebraska, for the consideration of $7,500. A certain Maxwell sedan for the consideration of $500. Cash in the sum of $1,500. An assignment of a certain insurance policy on the life of the said H. W. Winkelmann from the surrender value of which the sum of $500 is to be realized and paid, as hereinafter set forth, or, in lieu thereof, the sum of $500 in cash.

"Whereas, it is the desire of the said H. W. Winkelmann to make full payment of and restitution to the said bank for said portion of said shortage, and it is conceded by him that the property hereinbefore described may not realize the full amount of $10,000:

"Now, therefore, for and in consideration of the premises, and for and in consideration of the acceptance by the said bank, contingently, as herein set forth, of said assignments, conveyances and payments, it is understood and agreed that

the said H. W. Winkelman, in the event the property so as aforesaid assigned, conveyed and paid to the said bank by him shall not realize the full amount of the portion of said shortage agreed to be paid by the said H. W. Winkelmann, to wit, the said sum of $10,000, that the said H. W. Winkelmann has herein agreed to pay and make good, the said H. W. Winkelmann shall not be released from his obligation to pay any deficiency that may remain, but shall continue liable therefor until such deficiency shall be fully discharged by payment.

"The said H. W. Winkelmann agrees, so far as the payment to be made from the proceeds of the insurance policy hereinbefore mentioned, to do all things that may be necessary to realize thereon, and when such amount is received or collected by him, or when it is otherwise secured, to pay the same, forthwith, to the said bank."

"Dated this 8th day of November, 1923.

           "(Signed)       H. W. Winkelmann."

"Witness:   John F. Cordeal."

Mary S. Winkelmann is the wife of Henry W. Winkelmann and, on and before November 8, 1923, she was the owner of the real estate in Culbertson which is described in the foregoing instrument. Pursuant to the obligation, Winkelmann joined with his wife in executing and delivering a warranty deed to the real estate above referred to. This deed was delivered to and accepted by the bank as security for that part of the bank shortage for which Winkelmann desired to make restitution, and which he agreed to make good to the bank. In this suit the warranty deed was treated as a mortgage and, plaintiff having prevailed, it was foreclosed and a judgment was rendered wherein the court found and decreed "that plaintiff has a good and valid lien by virtue of the deed set forth in his petition in the nature of a mortgage to secure payment of $7,500," with 7 per cent. interest per annum from the date of the decree. From the judgment and decree defendant Mary S. Winkelmann appealed.

Mrs. Winkelmann admitted the execution and delivery of

the warranty deed in suit, by herself as owner, in which she was joined by her husband. In respect of the merits Mrs. Winkelmann testified that she talked with D. R. Mc-Callum, who was a stockholder and director of the bank since its organization, and that at her home on the evening of November 7, 1923, they, evidently meaning McCallum and her husband, who was also a director, asked her to sign the deed, and that she was promised that, in consideration of the signing and delivery of the deed, the bank would give her $7,500 of the notes. She testified that she relied on this promise and that, in reliance thereon, she executed and delivered the deed in suit. She testified that she never received any of the notes which were promised to her. From her evidence, unless she was mistaken, it would appear that the receiver, Peterson, and her husband, in her presence, had a conversation in which her husband said to Mr. Peterson "that we had done more than we ought to do and as what our share was; but we had done it to keep the bank going; and he (Peterson) said it would be all right, and he would see what he could do." On the cross-examination Mrs. Winkelmann admitted that she had no talk with the receiver, Peterson, before she delivered the deed to the bank. Mrs. Winkelmann's husband testified, in respect of the talk with McCallum, on the evening of November 7, 1923, that two other stockholders, namely, William Crews and J. M. Crews, were present for awhile, but that they did not stay long, and that after their departure McCallum said, if Mrs. Winkelmann would sign the deed and if it "would be acceptable to the bank, that in that way we might take up $10,000. * * * Q. And what was said to your wife about this arrangement? A. About all that was said to Mrs. Winkelmann was that I told her of the condition of the bank, and that it was necessary to make good this amount of money, which was not good to the bank, and in order to do so, Mr. McCallum had agreed, had partly agreed, to take up all remaining, provided we would take up $10,000" and that he, Winkelmann, said that, if she would sign the deed, they could take up the $10,000, but if

she refused to sign and deliver the deed, that they, the Winkelmanns, "would not be able to take up that much." Continuing Winkelmann testified: "Q. Was any consideration offered her for signing this deed? A. She asked what she would get, and I told her she would have to take of these assets. Q. Did you tell her how much? A. Seventy-five hundred dollars. Q. What did she say? A. Well, she finally consented. Q. Was Mr. McCallum present at the time this talk was had? A. Yes. Q. And heard the talk? A. Mr. McCallum asked her if she would sign the deed on these grounds, and I heard her tell him she would."

D. R. McCallum, above referred to, was called as a witness by defendants. He testified that no agreement was made by himself and H. W. Winkelmann, as officers and directors of the bank, or otherwise, that Mrs. Winkelmann should receive $7,500 of the bank's objectionable assets or notes and checks in consideration of her delivery of the deed in suit to the bank.

The evidence conflicts in some minor respects, but it is sufficient to support the judgment of the trial court. We have repeatedly held that, when an action in equity is appealed, wherein review of some or all of the findings of fact of the district court is asked by the appellant, it is the duty of this court to try the issues *de novo* and reach an independent conclusion without reference to the findings of the district court. Section 9150, Comp. St. 1922. And when the evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying. *Magill v. Magill, ante,* p. 636.

The Winkelmanns, for obvious reasons, were desirous of making good for the shortage which the record discloses and, as above noted, they conveyed certain real estate to the bank, of the agreed value of $7,500. It seems naturally to follow that the cashier's wife must have been mistaken in her expressed belief that, in return for the conveyance of the real estate to the bank, she was to receive therefor,

from the bank, the "frozen assets," be their value much or little, which are referred to in the record as "objectionable assets."

In view of the recitals and admissions in the instrument signed by H. W. Winkelmann, former cashier, and in view of the oral evidence generally, we conclude that the judgment is amply supported by competent evidence and it is therefore in all things

AFFIRMED.