HENRY H. HASSMANN, APPELLEE, v. THE CITY OF BLOOM-FIELD, NEBRASKA, APPELLANT.

20 N. W. 2d 592

FILED NOVEMBER 23, 1945. No. 31951.

*Votava & McGroarty*, for appellant.

*Frank L. Burbridge*, for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, and CHAPPELL, JJ.

CHAPPELL, J.

This is a workmen's compensation case. After a hearing before one judge of the compensation court and dismissal of

plaintiff's claim, rehearing before the full court was waived and appeal taken by plaintiff to the district court. That court granted plaintiff an award and defendant appealed to this court, assigning as error that the award is not supported by the evidence and applicable law. Upon examination of the record we are of the opinion that the findings of fact made by the trial court are not conclusively supported by the evidence and the cause will be considered de novo, as provided by sec. 48-185, R. S. 1943. Zanski v. Yellow Cab & Baggage Co., 143 Neb. 340, 9 N. W. 2d 302. In doing so we find that defendant's assignments of error should be sustained and an award denied.

It has long been the policy of this court to give a liberal construction to the Workmen's Compensation Act so that its beneficent purposes may not be thwarted by technical requirements of interpretation. Zanski v. Yellow Cab & Baggage Co., *supra*. However, it must be remembered that the rule of liberal construction of the Workmen's Compensation Act applies to the law and not to the evidence offered to support a claim by virtue of the law. The rule does not dispense with the necessity that claimant prove his right to compensation within the rules hereinafter set forth nor does it permit a court to award compensation where the requisite proof is lacking. Chambers v. Bilhorn, Bower & Peters, 145 Neb. 277, 16 N. W. 2d 173.

In that connection the rule is that the burden of proof is upon a claimant in a compensation case to establish by a preponderance of the evidence that personal injury was sustained by the employee by an accident arising out of and in the course of his employment. A compensation award cannot be based on possibilities or probabilities but must be based upon sufficient evidence that the claimant incurred a disability arising out of and in the course of his employment. Kaffenberger v. Iverson, 142 Neb. 257, 5 N. W. 2d 687; Zanski v. Yellow Cab & Baggage Co., *supra*; Chambers v. Bilhorn, Bower & Peters, *supra*.

With these rules in mind we will briefly review the evidence which predicates the result. Plaintiff was a large

man, 63 years of age at the time of trial. He had served as city marshal for defendant city many years. His health had been good except for recurring rheumatism, which was improved by removal of his teeth, and "belly aches" which occurred "not very often," as he stated it.

He testified that on December 25, 1941, while on duty and heavily dressed he slipped on the curb, fell flat, and felt a pain in his right side. Upon seeing his physician pass on the street he went with him to his office. There the physician dressed his hand, which had been slightly injured upon another occasion not connected with the fall. He then told the physician about his fall and complained of pain in his side and ankle. Examination of his abdomen and ankle disclosed no evidence of bruises or marks of violence and there were then no objective symptoms of a ruptured gall bladder.

Plaintiff also testified that on December 27, 1941, he slipped and fell again. He first testified that he fell on his head but later that he fell on his hip. Later his physician was called to the home where plaintiff complained of pain in his knee, ankle, and abdomen. At that time there was a slight bruise on his knee and slight muscle rigidity of his abdomen. The next day, not feeling well, he did not report for duty. Examination of plaintiff and X-ray taken December 29, 1941, disclosed no evidence of fracture of the knee or ankle. On December 30, 1941, he became quite ill and was taken to a hospital in Sioux City, Iowa.

His surgeon testifies that at that time plaintiff gave him a history of several recent falls on icy streets, the most severe of which was a few days previously at which time he injured his knee and bruised his upper right abdomen of which he had no previous complaint. An examination made at that time by the surgeon was mostly negative except for tenderness and some rigidness in the upper right quadrant. However, from the history given by plaintiff the surgeon's diagnosis was possible fracture of the liver. X-rays disclosed a nonfunctioning gall bladder. On January 12, 1942, plaintiff was dismissed from the hospital and returned

to his home for rest and preparation for subsequent surgery.

He was readmitted to the hospital on January 29, 1942, and a drainage operation disclosed an abscess secondary to rupture of his gall bladder. A few stones were found in the abscessed cavity and removed. Plaintiff was dismissed from the hospital on February 17, 1942, but readmitted on May 7, 1942, with a biliary fistula secondary to his drainage operation. A second operation was then performed which consisted of the removal of plaintiff's gall bladder, with stones therein and drainage of the common duct. He was dismissed from the hospital on May 23, 1942, and has recovered.

Plaintiff's physician testified that rupture of the gall bladder was very rare and resulted from two causes, disease and trauma, a very minute percent of which result from the latter and most of them from direct blows or stab wounds. He admits that if no marks of violence were present, as in the case at bar, it would be a very rare case since the gall bladder has a tough wall and is very well protected by other parts of the body, including the liver. He testified that he was of the opinion that the rupture of plaintiff's gall bladder resulted from his falls but admits that the rupture could have been caused by trauma or could have been caused by an infection or a necrosis resulting from stones and if plaintiff had never fallen he would say that it resulted from the latter.

Plaintiff's surgeon reported in writing to plaintiff's physician in part as follows: "I don't know how Mr. Hassmann is going to come out with the insurance company. There is no question but that he had an empyema of the gall bladder with perforation—a walled-off abscess. Whether such condition could be caused by an injury is questionable." In another letter to the physician he said in part: "The only leg Mr. Hassmann has to stand on is the history of no previous symptoms before his falling and his sequence following the fall."

The surgeon testified that a ruptured gall bladder is ordi-

narily associated with a previously diseased gall bladder and is ordinarily due to obstruction or infection causing distention whether by stones, streptococcus, typhoid, or other factors. He admits that the rupture of plaintiff's gall bladder could be explainable solely on the basis of disease but the sequence of events would make him think that trauma had something to do with it. However, without history of a fall he would say it was caused by disease since it could be present without recognizing the symptoms. He admits that in the absence of stab wounds or pressing injury the conclusion that it was caused by trauma could not be based solely on the history given. Finally the surgeon said that to be honest the alleged fact that the fall aggravated plaintiff's diseased condition is purely conjectural since his condition was explainable as well solely on the basis of disease, regardless of any fall.

A physician who specializes in internal medicine and diagnosis and is an associate professor of medicine at the University of Nebraska, College of Medicine, testified for defendant. He had during his practice seen and treated a large number of gall-bladder cases. He describes the gall bladder as a conical, suspended, stout, elastic, muscular sac under and attached to the liver. It stores the bile and of necessity expands and contracts. He says that it is very difficult to rupture except by direct blow, such as gunshot wounds, and that there are two kinds of diseased gall bladder, one with and the other without stones. The evidence conclusively supports his statement that plaintiff must have had chronic gall-bladder disease with stones at the time of his accidents. He explained that if a stone obstructs the return of bile to the common duct it sets up an irritation and pressure, resulting in inflammation, shutting off circulation leading to necrosis and perforation, the size of which determines the extent of subsequent symptoms. After perforation nature then attempts to seal it but if unable to do so an abscess develops or if the perforation is large enough an abscess does not develop but the patient goes into immediate shock and disablement requiring opera-

tion. Such perforations are not rare in chronic gall-bladder disease with stones but very, very rarely caused by trauma. If an abscess develops it demonstrates that originally it was a small perforation. If stones are found in the abscess, as in this case, it simply means that the perforation of the gall bladder subsequently became large enough for them to escape. He says that plaintiff undoubtedly had a ruptured gall bladder but just when it started is purely conjectural since the result in plaintiff's case is no different from those cases without history of accident. He testified that trauma could not produce stones or inflammation and resulting necrosis, therefore the only question was whether plaintiff's accidents hastened the rupture of his gall bladder and that since the same result could as well follow without accident the answer would be purely conjectural.

We conclude that the evidence supporting plaintiff's contention that he incurred a disability arising out of and in the course of his employment is purely speculative and conjectural, based on possibilities and probabilities, which will not support an award. For the reasons heretofore given the judgment of the trial court is reversed and the case is dismissed.

REVERSED AND DISMISSED.

Wenke, J., participating on briefs.

YEAGER, J., dissenting.

I cannot agree with the majority opinion in this case. It appears to me that this court has taken a position on undisputed facts which position, in this case and for the future, places a claimant in a workmen's compensation action in a less favorable position than a plaintiff in a common law action for damages for personal injuries or in an action to recover for injuries under an accident insurance policy. This ought not to be true. This court ought not to add to the disadvantage of workmen's compensation claimants already imposed by the Legislature wherein it declared among other declarations that there could be no recovery in the absence of objective symptoms of injury at the time of accident.

Sec. 48-151, R. S. 1943; Shamp v. Landy Clark Co., 134 Neb. 73, 277 N. W. 802. This is not true in an action at common law or on an insurance policy. This statement requires no citation.

I am finding no particular fault with any principle of law announced in the majority opinion but I do seriously contend that the court has failed to recognize the true purport and effect of the facts.

I am in accord with the proposition that the burden of proof is upon the claimant in a compensation case to establish that personal injury was sustained by the employee by accident arising out of and in the course of his employment. I am also in accord with the proposition that a compensation award cannot be based on possibilities or probabilities but must be based upon sufficient evidence that the claimant incurred a disability arising out of and in the course of his employment.

My point is that the plaintiff herein did meet the requirements of these rules of law the majority opinion to the contrary notwithstanding.

The majority opinion disposes of the question of objective symptoms in the following words: "Examination of his abdomen and ankle disclosed no evidence of bruises or marks of violence and there were then no objective symptoms of a ruptured gall bladder."

In my opinion this is neither a complete nor proper disposition of this question. The statute as applied to this case does not exact objective symptoms of a ruptured gall bladder. It only requires "objective symptoms of an injury." Of course I would not contend that objective symptoms not in the vicinity of the ultimate injury complained of would satisfy the statute, but surely if objective symptoms were found in the immediate vicinity the burden of proof in this respect would be met. Surely the Legislature did not intend, when it placed this already unusual burden on a workmen's compensation claimant, to have the court interpret it to mean that there could never be a recovery unless the objective symptom was a manifestation of the disabling injury.

I think there was evidence of objective symptoms within the true meaning of the statute. Within a short time after the first fall the plaintiff called upon his doctor to have a hand dressed. The condition of the hand had no connection with the fall. At the time, however, it is apparent that an examination of plaintiff's abdomen was made. Testifying with regard to it the physician said: "I dressed his hand and examined his abdomen and I couldn't find much outside of his complaint—much symptoms. There wasn't a great deal of tenderness or a great deal of rigidity of the muscles, but he still complained of his pain and appeared sick." It is clear to me that this amounts to a statement that rigidity of abdominal muscles—objective symptoms—was found.

This court is powerless to do anything about the unfavorable inequality of claimants in workmen's compensation cases with plaintiffs in common law actions for personal injuries and plaintiffs in actions on accident insurance policies created by the Legislature but it should not add to that inequality by a strained interpretation of "objective symptoms."

Coming now to the question of whether or not, aside from the question of objective symptoms, plaintiff has sustained the burden of proof imposed upon him by law, I respectfully insist that he has done so sufficiently and without contradiction.

The majority insist that his evidence leaves him in the realm of possibility, probability, and speculation. With this I cannot agree.

The attending physician and the operating surgeon each gave it as his opinion that the ruptured gall bladder came about in consequence of the fall or falls. The pertinent portion of the testimony of the physician was the following: Q. "Do you know at this time what the diagnosis should be? A Today? Q Yes. A He had a ruptured gall bladder. Q He had a ruptured gall bladder? A That was found on surgery. Q To what do you attribute that, Doctor? * * * A From his symptoms and the times I saw him and for the conditions that he complained of and his physical condition,

I would say that it was the result of his falls. Q The result of the falls of December 25th and December 27th? A Yes. * * * Q Well, Doctor, from the history and your findings, what would you say that Mr. Hassmann suffered there on December 25th and 27th as a result of this fall? A I believe he suffered abdominal injury and the findings from the surgery indicated that abdominal injury was a ruptured gall bladder."

The pertinent portion of the testimony of the surgeon was the following: "Q This abscess that you spoke about, Doctor, where was that? A Well, that was a walled-off abscess in the region of the gall-bladder. Q Connected with the gall-bladder? A Yes. Q In your opinion what caused that? A Well, I would just have to say this: that he evidently had had this gall-bladder trouble, which evidently didn't give him symptoms, but following the trauma the symptoms became evident. * * * Q In other words, the condition there in the gall-bladder was aggravated by this fall? * * * A Well, the only thing I can say is that the sequence of events would make one have to consider that the trauma precipitated his trouble. Q In other words, in your opinion then this condition he had at the hospital was precipitated by this fall or aggravated? * * * A Yes."

On cross-examination this surgeon gave the following testimony: "Q But isn't it a fact, Doctor, that this roll that this fall played in aggravating this diseased condition is purely conjectural? A Well, I suppose to be honest one would have to say that too. * * * Q But in this particular case it is questionable, isn't it, Doctor? A There you fellows are right back to the same spot and I am trying to be honest with you and tell you it is just the association of the history and the subsequent findings."

It is true that the testimony of the surgeon on cross-examination would seem to cast some doubt upon his opinion but that is not true of the testimony of the physician.

As against the considered opinion of these two witnesses the defendant called a specialist in internal medicine and diagnosis. This witness based his testimony on experience

and knowledge of the subject in hand, the history of the case, hospital records, and the testimony given by other witnesses. He did not refute or attempt to refute the opinions of plaintiff's witnesses. He expressed no opinion. The pertinent part of his testimony is the following: "Q In other words, you wouldn't tell this Court this fall had nothing to do with the perforation, would you? A No; I cannot say that it did; or I cannot say that it didn't. I am perfectly open minded about it." And again: "I have seen them there and if the trauma was there, there is no difference between this case and the cases that I have seen and handled where there is no history of trauma indicated. It is purely conjecture. I could not say. Anything is possible."

All that he did or attempted to do was to speculate. Is the proper and competent evidence of plaintiff to be overcome by admitted speculation? It would be a strange rule that a plaintiff should be required to prove his claim by proper and competent evidence and he must remove himself from the realm of speculation but mere speculation on the part of his adversaries without denial may be sufficient to defeat his claim founded upon evidence.

In the light of the recent cases of Long v. Railway Mail Assn., 145 Neb. 623, 17 N. W. 2d 675, and McNaught v. New York Life Ins. Co., 145 Neb. 694, 18 N. W. 2d 56, it is clear that if this were a case triable to a jury the evidence of plaintiff here would be sufficient upon which to base a verdict. In truth a comparison of the evidence here with that in Long v. Railway Mail Assn., *supra,* will disclose that if this were a jury case the evidence alone of the surgeon, weakened as it is by the answers on cross-examination, would be sufficient to sustain a verdict.

This being true and there being no evidence to counter that of plaintiff, should this court, on the mere record, in the face of the fact that the trial court had opportunity to observe the witnesses who appeared in court and testified, and found and decreed that the plaintiff had proven a right of recovery under the workmen's compensation law, disbelieve the plaintiff's testimony and overturn that finding and decree? I respectfully insist that it should not do so.