MEENT MEESTER, APPELLANT, V. TATE SCHULTZ, AN INDIVIDUAL DOING BUSINESS AS SCHULTZ GRAIN COMPANY, APPELLEE.

38 N. W. 2d 739

Filed July 14, 1949. No. 32611.

*John E. Willits,* for appellant.

*Stiner, Boslaugh & Stiner,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

MESSMORE, J.

This is a workmen's compensation case. We set forth the following proceedings had in the district court for Adams County as being essential to a determination of this appeal.

On May 3, 1948, the district court entered judgment in favor of the plaintiff and against the defendant, finding that on July 20, 1945, the plaintiff suffered an accident arising out of and in the course of his employment with the defendant, and as a result thereof suffered a 25 percent permanent partial disability to his right arm and shoulder, and awarding compensation to the plaintiff for such disability at the rate of $18 a week for 56¼ weeks, amounting to a total of $1,012.50, and allowing attorney fees and costs.

On May 11, 1948, the defendant filed a motion for a

new trial, within the 10 days required by law. See section 25-1143, R. S. Supp., 1947. On June 12, 1948, the motion for new trial was argued and submitted. On July 24, 1948, the district court sustained the defendant's motion for a new trial on the ground that the judgment entered in favor of the plaintiff May 3, 1948, was not sustained by the evidence. These proceedings were had at the same term of the district court in which the judgment of May 3, 1948, was rendered. On October 21, 1948, the case was tried again in the district court and was taken under advisement. On November 29, 1948, the district court rendered a judgment in favor of the defendant and against the plaintiff, determining that the evidence was insufficient to sustain any award in plaintiff's favor, and dismissed the plaintiff's action.

On December 3, 1948, the plaintiff filed a motion to set aside and vacate the judgment entered on November 29, 1948, alleging that the judgment rendered May 3, 1948, had become, and was, a final judgment in full force and effect under the law of this state. On December 9, 1948, the plaintiff filed a motion for new trial and reserved therein the rights as set forth in his motion to vacate the judgment entered November 29, 1948. On December 10, 1948, the district court overruled the plaintiff's motion to vacate the judgment entered November 29, 1948, and the plaintiff's motion for a new trial with reference to the judgment entered on such date.

The plaintiff appeals from the judgment entered on November 29, 1948, and the motion to vacate said judgment which was overruled on December 10, 1948.

For convenience the appellant will hereafter be referred to as the plaintiff, and the appellee as defendant.

The plaintiff contends that the trial court erred in not holding the judgment entered May 3, 1948, in favor of the plaintiff and against the defendant in the district court, to be a final judgment. In this connection the plaintiff relies on certain language contained in section 48-185, R. S. 1943, which provides in part as follows:

"Any appeal from the judgment of the district court shall be prosecuted in accordance with the general laws of the state regulating appeals in actions at law except that such appeal shall be perfected within thirty days from the entry of judgment by the district court * * *."

Plaintiff argues that the defendant failed to perfect an appeal within 30 days from the entry of the judgment in the district court as is required by said section, and therefore the judgment entered May 3, 1948, became a final judgment.

This court in Hansen v. Paxton & Vierling Iron Works, 135 Neb. 867, 284 N. W. 352, held: "While a motion for a new trial is unnecessary in a workmen's compensation case, if such a motion is filed in the district court under the general provisions of the Code of Civil Procedure, the time for perfecting an appeal from the district court to the supreme court does not commence to run until the overruling of such motion." See, also, Lincoln Packing Co. v. Coe, 120 Neb. 299, 232 N. W. 92; Saxton v. Sinclair Refining Co., 125 Neb. 468, 250 N. W. 655.

Under the afore-cited authorities, in the event the defendant or the plaintiff desired to appeal from the ruling made by the district court, the 30-day period under section 48-185, R. S. 1943, would run from July 24, 1948. The defendant, having obtained a favorable ruling on his motion, there would be no reason for him to appeal.

All of the provisions of our Civil Code are applicable and controlling in a workmen's compensation case as they are in any other civil action equitable in nature. See Chilen v. Commercial Casualty Ins. Co., 135 Neb. 619, 283 N. W. 366.

All findings, orders, awards, and judgments of the district court shall be conclusive upon all the parties at interest unless reversed or modified upon appeal as provided in the Workmen's Compensation Act. See section 48-181, R. S. Supp., 1947.

The plaintiff did not appeal from the order of the district court entered July 24, 1948, which sustained the

defendant's motion for a new trial on the judgment rendered May 3, 1948, but voluntarily participated in the second trial of this case held on October 21, 1948, and the record in the second trial does not disclose that the bill of exceptions in the first trial was offered or received in evidence on the second trial.

"Where a ground or grounds for a motion for a new trial present a question or questions of fact which are in dispute, the district court becomes the judge of such questions of fact. * * * If a party desires a review of that determination, the showing thereon must be preserved in the record." Greenberg v. Fireman's Fund Ins. Co., 150 Neb. 695, 35 N. W. 2d 772.

There is nothing for this court to review with reference to the first trial.

Under the procedure as heretofore outlined, we conclude that the plaintiff waived any error in the granting of a new trial to the defendant from the judgment rendered May 3, 1948. The following cases are applicable.

In Lundblad v. Erickson, 180 Minn. 185, 230 N. W. 473, the court said: "It is the rule that, where a new trial of all the issues is granted, the first trial is wholly set aside and the case stands as if there had been no trial." See, also, Fehr v. Campbell, 288 Pa. 549, 137 A. 113, 52 A. L. R. 506; Evans v. Davidson, 57 Idaho 548, 67 P. 2d 83; Etcherson v. Hamil, 131 Ark. 87, 198 S. W. 520; Zschokke v. Lumley, 22 Cal. App. 2d 224, 70 P. 2d 495; Gilbert v. Marrow, 54 Neb. 77, 74 N. W. 420.

Plaintiff's contention to the contrary cannot be sustained.

The further matter for determination in this appeal is the proceedings had in the second trial and the sufficiency of the evidence to sustain an award of compensation in favor of the plaintiff for permanent partial disability as contended for by him. The disability complained of is limitation of movement of his right arm and shoulder. His contention in such respect is that he now suffers from subdeltoid bursitis.

The record discloses that the defendant Theodore Schultz, also known as Tate Schultz, was engaged in the grain and feed business at Hastings, Nebraska. The plaintiff had been employed by the defendant off and on for a period of ten years as a laborer, prior to July 20, 1945. His duties were primarily to sack feed, load it into trucks, make deliveries as required, and on occasions to scoop grain and clean up around the elevator.

Located in the driveway on the defendant's premises was a pneumatic hoist, or lift, situated in a pit 6 or 7 feet long, 4 or 5 feet wide, and about 9 feet deep. This hoist was used to raise the front of trucks loaded with grain for the purpose of dumping the same, as is usually done in grain elevators. During the early part of the afternoon of July 20, 1945, Herman Schultz, a brother of the defendant, was engaged in repairing the hoist, it being deemed necessary to replace valves therein, and the hoist was in the process of being assembled. The platform which ordinarily covered the pit had been removed and in place thereof some beams were placed across the top of the pit. There were four endless chains, known as hoist chains, hanging over the pit, the lower end of which was approximately 3½ or 4 feet above the level of the floor. Herman Schultz was standing on the frame of the hoist in the southeast corner of the pit, tightening the last bolt of the framework. His waist was about level with the floor, and he was facing southeast. Apparently the bolt he was attempting to tighten failed to hold, and he asked for another wrench. The plaintiff was standing west of the pit when he was directed by the defendant to go into the pit and hold the bolt. He had a wrench in his left hand. The plaintiff was a man at that time of about 60 years of age, weighing 220 pounds. He took hold of one of the chains of the chain hoist. One of the beams which he was crossing was loose, and he slipped and fell on some braces.

The plaintiff testified that when he slipped on the

beam which he was crossing, having hold of one of the chains, it wrapped around his right arm above the elbow and pulled that arm back and, as he expressed it, "throwed" it back. As he fell his body struck the defendant's brother. His head struck the south side of the pit and his body was lying on the braces. He further testified that at the time of the fall his weight was suspended until the chain hoist let loose. He fell onto some braces which saved him from falling into the pit, and he succeeded in getting up by himself. He also testified that after the accident his right arm was bruised and became numb; that he was right handed, and through the loss of use of his right shoulder he was unable to shave himself or do the things and perform the labor that he had previously performed; that he lacked strength in his right hand and it became numb when he laid it down; that since the accident he had been continuously bothered with his right shoulder; that upon his return to work he informed the defendant as to the disability to his right shoulder and arm as he conceived it, but the defendant insisted that he remain, so he continued in the employ of the defendant until in March 1946, when, as he terms it, he was "fired." He further testified that he attempted to obtain employment elsewhere and for a couple of weeks drove for a cab company but his right shoulder and arm bothered him to such an extent that he was unable to continue this employment; and that he made application for janitor work and was turned down and has since been unable to obtain employment. He further testified that he took 30 or 35 treatments from Dr. Uridil which apparently failed to help him in any manner.

The plaintiff's wife testified that prior to the accident the plaintiff was able to perform labor, and in doing so used his right arm and shoulder to advantage; that it was in a normal condition. Subsequent to the accident his right arm disclosed less strength than it had shown previously. From an examination of his right shoulder

and arm she found that he had bruise marks on his right arm between the elbow and shoulder, together with some swelling; and that in doing any work subsequent to the accident he favored his right arm and shoulder and made more use of his left arm.

The plaintiff's son-in-law testified that before the accident the plaintiff's right arm and shoulder were normal; that he had engaged in general farming and performed such duties as pitching hay, and at times had carried a five gallon bucket of slop in each arm to feed the hogs, and was capable of doing everything connected with farm labor; that after the accident the plaintiff came to his place on three or four occasions and was unable to work as he had previously, and when he would slop the hogs he used a two and one-half gallon bucket which he carried with his left hand; and that he was unable to use a hammer with his right hand or to perform farm labor as he had previously done before the accident.

The defendant testified that he saw the plaintiff when he fell; that the hoist chain did not wrap around the plaintiff's elbow or arm in any manner; and that as the plaintiff fell he let loose of the chain and it swung back and hit the defendant's brother who was in the pit, in the head. This evidence was substantially corroborated by the defendant's brother, to the extent that as the plaintiff fell he fell onto him and the chain hoist struck him in the head.

A relative of the plaintiff who was present at the elevator at the time of the accident testified that the plaintiff took hold of the chain hoist and then fell, but he did not see the plaintiff's arm get caught or twisted in the chain hoist.

There is testimony that the defendant did not discharge the plaintiff from his employment after March 1946, because he had sold out the business and was himself working for the new proprietor; and that the plaintiff returned to work the afternoon of the accident and continued to perform the same duties as he pre-

viously had, up to the date of his severance from his employment.

Immediately after the accident the defendant took the plaintiff to the office of Dr. J. W. Brown. This doctor testified that the plaintiff arrived at his office shortly after noon on July 20, 1945, and complained about his right shoulder. The doctor made an examination of the plaintiff's right shoulder and was unable to determine that there was anything wrong with it. However, to be absolutely safe, he recommended that the plaintiff see and consult another doctor and have an X-ray made of the right shoulder.

From Dr. Brown's office the plaintiff went to the office of Dr. Joseph E. Uridil. This doctor testified that upon arriving at his office the plaintiff complained of an injury to his right shoulder. He made an X-ray picture of the shoulder, and subsequent to an analysis thereof, gave the plaintiff various treatments including diathermy, rest, and sedatives to which, after a period of time, the plaintiff failed to adequately respond. As a consequence, the doctor made another X-ray examination of the plaintiff's right shoulder, and from an analysis of both X-rays, determined that they were negative and failed to show any pathology in the plaintiff's right shoulder. However, this doctor continued to treat the plaintiff until it was apparent that his treatment failed to relieve the plaintiff and he informed him that nothing more could be done for him, and ceased to treat him.

Dr. A. A. Smith testified in behalf of the plaintiff on the second trial, to an examination made of the plaintiff on April 22, 1948. From this examination he estimated the plaintiff's right shoulder to have a permanent partial disability of between 15 and 25 percent. He did not testify that this condition resulted from a trauma caused by an accident which the plaintiff might have received arising out of and in the course of his employment, but did testify that the condition could have re-

sulted from a number of causes, such as external force or infection in the plaintiff's system.

It might be stated at this point that Dr. Uridil diagnosed the plaintiff's condition as causalgia, or a neuralgia of the sympathetic nerves, a term applied to pain resulting from injury to a nerve. Plaintiff's counsel did not pursue this diagnosis. Dr. Uridil testified that he thought this condition came on gradually. Dr. Smith apparently found no evidence of causalgia. What he found was that the condition with which the plaintiff claimed to be suffering might be caused from some force exerted from without, from striking the arm or shoulder, from force of twisting or bruising, or it might be due to conditions internally, such as a rheumatic condition or an infection in the system which might spread to a joint and cause it to become partially immobilized and even destroy part of the joint surfaces and cause the joint or member to become disabled.

Dr. L. J. DeBacker testified that he examined the plaintiff on October 15, 1948, including an X-ray of the plaintiff's right shoulder and chest. From an analysis of the X-ray he found no abnormality or pathology of the bony structure. From an examination of the plaintiff's right arm he found approximately 20 percent limitation of active motion, but no evidence of muscle atrophy or disturbance of the nerves of the arm, and no indication that the plaintiff was suffering from causalgia. He further testified that many things could have caused that which the plaintiff complained of in his right shoulder, including periarthritis.

It is apparent from the foregoing medical testimony that the experts testifying were not in accord as to what caused the condition of the right shoulder of which the plaintiff complained. The cause of the plaintiff's condition affecting his right shoulder and arm is speculative and conjectural. In short, there is no testimony that the condition complained of by the plaintiff arose out of and in the course of his employment by the defendant.

We have set out the evidence in some detail to ascertain if the same is sufficient to warrant an award under the workmen's compensation law as claimed by the plaintiff.

In determining the right of a claimant to an award under the workmen's compensation law, there are certain established rules in this jurisdiction. In the first instance, the burden of proof is upon a claimant in a compensation case to establish by a preponderance of the evidence that personal injury was sustained by the employee by an accident arising out of and in the course of his employment. See, Kaffenberger v. Iverson, 142 Neb. 257, 5 N. W. 2d 687; Chambers v. Bilhorn, Bower & Peters, Inc., 145 Neb. 277, 16 N. W. 2d 173; Hassmann v. City of Bloomfield, 146 Neb. 608, 20 N. W. 2d 592.

"In a proceeding under the workmen's compensation law, where the evidence is conflicting, the supreme court upon a trial de novo may consider the fact that the district court gave credence to testimony of some witnesses rather than to contradictory testimony of other witnesses." Sherman v. Great Western Sugar Co., 127 Neb. 505, 255 N. W. 772. See, also, Hudson v City of Lincoln, 128 Neb. 202, 258 N. W. 398; Sbarra v. Middle States Creameries, 140 Neb. 813, 2 N. W. 2d 26.

When the evidence in a compensation case on material issues so conflicts that it cannot be reconciled, this court will consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite. See, Graham Ice Cream Co. v. Petros, 127 Neb. 172, 254 N. W. 869; Sporcic v. Swift & Co., 149 Neb. 246, 30 N. W. 2d 891; Peterson v. Winkelmann, 114 Neb. 714, 209 N. W. 499.

No recognition of the doctrine that because an injury may probably be the cause of an ailment the court should so find appears in our decisions. It may be so in other states, but not in this jurisdiction. The Nebraska rule, often pronounced and adhered to, is that in proceedings

under the workmen's compensation law awards for compensation are not to be based upon possibilities or probabilities, but only upon sufficient evidence showing that the claimant has incurred a disability arising out of and in the course of his employment. See, Bartlett v. Eaton, 123 Neb. 599, 243 N. W. 772; Townsend v. Loeffelbein, 123 Neb. 791, 244 N. W. 418; Saxton v. Sinclair Refining Co., 125 Neb. 468, 250 N. W. 655.

As is apparent from the evidence, there is a disputed question of fact, and to some degree credible evidence on both sides. However, in the light of the foregoing authorities and from an analysis of the evidence on trial de novo, we conclude that the plaintiff has failed to prove and establish his case by a preponderance of the evidence, as is required by law. We therefore hold that the evidence is insufficient to establish the plaintiff's claim for compensation under the workmen's compensation law, and the judgment of the trial court is affirmed.

AFFIRMED.