VENCL SKALAK, APPELLANT, V. COUNTY OF SEWARD,
NEBRASKA, ET AL., APPELLEES.

119 N. W. 2d 43

Filed January 11, 1963. No. 35301.

Ivan A. Blevens, for appellant.

Baylor, Evnen, Baylor & Urbom, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

YEAGER, J.

This is an action by Vencl Skalak, plaintiff and appellant, against the County of Seward, Nebraska, and Hawkeye-Security Insurance Company, a corporation, defendants and appellees, originally instituted in the Nebraska Workmen's Compensation Court to recover

workmen's compensation benefits on account of an alleged accident, claimed to have arisen out of the employment of plaintiff by the defendant county, on or about November 13, 1959. The other defendant is the workmen's compensation insurance carrier of the county and reference to it will not be required further in the consideration of the litigated questions involved herein.

The case was tried in the first instance to a single member of the workmen's compensation court and as a result the plaintiff was denied compensation. Thereafter the plaintiff waived rehearing by the full workmen's compensation court and perfected a pretended appeal directly to the district court. The waiver of rehearing was refused by the defendants and request was made by them for rehearing before the entire workmen's compensation court. Rehearing before the entire court was allowed.

The plaintiff filed a special appearance challenging the right to a hearing before the entire court which was overruled. The plaintiff, for the record, preserved the record of his special appearance. A trial was had to the entire court, and at the conclusion of this hearing relief was denied to the plaintiff. From this judgment the plaintiff appealed to the district court where, in accordance with law, it was tried on the record of evidence taken by the full workmen's compensation court. The question presented by the special appearance was passed upon by the district court unfavorably to the plaintiff, and again a judgment was rendered denying any relief to the plaintiff. Motion for new trial was duly filed and in due course overruled. From the judgment and the order overruling the motion for new trial the plaintiff has appealed.

The brief of plaintiff contains two assignments of error. The first is that the court erred in finding that the plaintiff did not sustain the burden of proof, and the second is that the court erred in permitting the defendants to proceed with a rehearing before the compensation

court en banc after the plaintiff had waived rehearing and had docketed an appeal in the district court. The second assignment will be considered first herein.

The theory of this assignment of error is that the defendants, having been the successful parties with nothing from which to appeal, could not prevent a direct appeal to the district court from the one-member adjudication of the workmen's compensation court. This question was directly presented and passed upon adversely to the contention of the plaintiff in the following language in Light v. Nebraska Workmen's Compensation Court, 166 Neb. 540, 89 N. W. 2d 833: "The right of either party to a workmen's compensation proceeding to refuse to accept the findings, order, award, or judgment of the judge of the workmen's compensation court who is assigned to hear the same, and to secure in the manner provided by law a rehearing thereof by such compensation court and a determination by a majority of the members thereof, is paramount to and exclusive of the right of appeal from such original decision."

Nothing has been presented to justify a departure from this pronouncement, therefore it will be said that the assignment of error is without merit.

As to the other assignment of error the burden was upon the plaintiff to establish by a preponderance of the evidence that a personal injury was sustained by him in an accident which arose out of and in the course of his employment by the defendant county. See, Meester v. Schultz, 151 Neb. 614, 38 N. W. 2d 739; Jones v. Yankee Hill Brick Manuf. Co., 161 Neb. 404, 73 N. W. 2d 394; Chism v. Convair Mobile Homes, 173 Neb. 86, 112 N. W. 2d 393.

A workmen's compensation case is considered and determined de novo on the record and on that basis the determination is made as to whether or not the plaintiff has sustained the burden imposed. See, Jones v. Yankee Hill Brick Manuf. Co., *supra;* Feagins v. Carver,

162 Neb. 116, 75 N. W. 2d 379; Dworak v. City of Omaha, 172 Neb. 209, 109 N. W. 2d 160.

In his original petition filed in the workmen's compensation court plaintiff alleged that he was the victim of an accident occurring on November 13, 1959. The accident charged is that he was operating a maintainer for the purpose of removing ruts from county roads in temperatures which at the time were below zero, and that while he was doing this, due to the jarring and shaking of the maintainer, the heater in the maintainer was broken and on that account failed to operate, by reason of which he was subjected to exposure to cold greater than that of the general public in the same locality, and which became a hazard over that of others in the locality.

The accidental injury is alleged as follows: "That as a direct and proximate result of the freezing of the plaintiff's foot and leg, he suffered complications of a deep seated osteomyelitis of the phlanx (sic) of the third and fourth toes on his left foot, requiring surgical removal of the distal end of the phlanx (sic) bone on the third toe."

This pleading and the evidence throughout the record point to a named antecedent and existing condition or disease which, coupled with the accident and the described alleged weather conditions, caused the plaintiff's claimed accident. This condition or disease was osteomyelitis. A definition or description of it is not found in the evidence of the medical and surgical witnesses or elsewhere in the record.

In this light it does not appear improper to set forth here the analytical definition of the disease and the area of involvement in the event of its existence. In Dorland's Illustrated Medical Dictionary, 23rd edition, osteomyelitis and other related terms are defined as follows:

Osteomyelitis: "Inflammation of bone caused by a pyogenic organism. It may remain localized or it may

spread through the bone to involve the marrow, cortex, cancellous tissue and periosteum."

Pyogenic: "Producing pus."

Cancellous: "Of a reticular, spongy, or lattice-like structure: used mainly of bony tissue."

Cortex: "The outer layer of an organ as distinguished from its inner substance."

Periosteum: "The tough fibrous membrane surrounding a bone. It adheres to the surface of the bones, excepting at their cartilaginous extremities. It consists of two closely united layers, the outer one made up of connective tissue, with occasionally a few fat cells; the inner one of fine elastic fibers, forming a dense network."

There is no dispute about the fact that the plaintiff was afflicted with osteomyelitis and that it had manifested its existence on occasions over a long period of years. He had a fracture of his left ankle in 1938 and received treatment for osteomyelitis first in 1939. Without going into detail it will be said that the record discloses that intermittently on occasions for long periods of time the plaintiff received medication the purpose of which was to combat the disease. On two occasions amputation of the lower part of the leg was advised. Coming down to the later period the doctor of the plaintiff testified that, in addition to treatment on numerous other dates which will not be mentioned here, he saw and treated plaintiff for this condition on four occasions during July and August 1958, about 14 times in April 1959, eight times in May 1959, and one time in October 1959. This doctor saw him again on December 12, 1959, when for the first time he was told about the alleged freezing of the foot.

No effort was made on the trial to disclose the primary location or locations of the inflammation from which the active condition of which the plaintiff complains flows, if indeed there was any such. The medical evidence indicates that the described conditions were found and treated. The immediate conditions found

were in the toes and areas directly behind the toes. There had been however earlier manifestations of the disease in other areas, and particularly in the heel.

It is made clear that there were external manifestations of the then condition and by X-rays the full local condition was ascertained. These disclosed the existence of osteomyelitis which received treatment by medicines and surgery.

These manifestations become apparent, according to the medical testimony, as the result of sinuses extending outward from the local situs of the inflammation which were avenues for the carriage of pus. Sinus, as the term is used here and by the medical witnesses in their testimony, is "a narrow elongated cavity or tract which extends from a focus of suppuration and other inflammatory softening to a free surface and through which pus discharges." See Webster's Third New International Dict., p. 2126.

The plaintiff was not examined or treated for the injuries which he says were the result of what occurred on November 13, 1959, until December 12, 1959.

Up to this point the consideration relates to the situation as it applied to the original petition filed by the plaintiff, the one on which the case appears to have been tried before the single member of the compensation court. On March 20, 1961, plaintiff filed a new petition in which he departed from the allegation that the temperature was below zero on November 13, 1959, and alleged "The day of November 13, 1959, was very cold with temperatures below freezing." In addition he alleged that while out in this low temperature it became necessary to replace a blade on the maintainer which he was using and that the blade dropped on his frostbitten foot wounding and injuring him. This had not been previously pleaded. The results alleged were substantially as in the original petition.

The extent of the burden which rests upon the plaintiff in this case has been stated. Pursuant to that bur-

den he was required to show either that he suffered an unexpected or unforeseen event which happened suddenly and violently, with or without human fault, which at the time produced objective symptoms of an injury, or an occupational disease, or in other words one which was characteristic of and peculiar to the particular trade, occupation, process, or employment in which he was at the time employed and which excluded all ordinary diseases of life to which the general public are exposed. See § 48-151, R. R. S. 1943.

The latter of these requires no consideration here except to say that there is no evidence of the existence of occupational disease within the meaning of the Workmen's Compensation Act. The question here is alone that of whether or not the plaintiff was the victim of an accidental injury as defined by statute.

Bearing on this question the plaintiff gave testimony the effect of which was that about 11 a.m., November 13, 1959, he had his claimed accident and at that time the temperature was about 17°; that it took 1 to 1½ hours to change the maintainer blade; that he dropped the blade on his left or bad foot which had no feeling in it; that the foot swelled; that the fall of the blade produced no bruise or laceration but it did produce discoloration by the next day; that he continued to work at his employment that day and from then on until about January 17, 1960; and that he did not seek medical attention until December 12, 1959. He testified further to the existence of osteomyelitis in 1952 in which year his left ankle was rebroken and that from about that time on to the date of his present alleged accident he had no treatment except for a callous or something from his shoe. His testimony is not definite as to whether or not he ever told anyone in any capacity for the defendants about the claimed falling blade prior to the time the second petition was filed.

This contains a summary of the evidence of the happening of the alleged accident. There is no refutation

of the evidence of the happening and in that it may be assumed that the plaintiff has sustained the burden of proof.

Accepting this assumption it then becomes necessary to determine whether or not under all of the other evidence this amounted to a compensable accident.

In the first place, and about this there is no question, there was never any visible evidence of trauma. The plaintiff himself observed none. The only thing that was observable by the naked eye or by X-ray was osteomyelitis with its current symptoms and results. If this was a compensable accident, proof of that had to be deduced from what could be seen at the time, the earlier history as disclosed by the evidence, and the sequence of subsequent events and conditions.

There is evidence from which it could be said that the plaintiff was a long-time sufferer from osteomyelitis which had serious and observable manifestations with considerable frequency at least from 1952 up to the end of October 1959, and with some frequency before 1952 following an accident which occurred in 1938.

To sustain his action the plaintiff called two physicians. One of these testified in pertinent part that he first saw and examined plaintiff in September 1960, and found the osteomyelitis with the history of a "thermo-injury" that occurred in 1959. Surgery was performed in September 1960. It does not appear that he received any history back of 1959 except as to a fracture in 1938. On the findings and the limited history he stated in substance that from what he found from his examinaion the accident might well have been and probably was an aggravating factor in causing the onset of osteomyelitis after November 13, 1959. His opinion did not go beyond this.

The other physician called testified, likewise in pertinent part, that he first saw the plaintiff professionally in 1938 and on numerous occasions thereafter including December 12, 1959, when he saw him regarding the con-

dition which is the subject of this action. At that time he was told of the alleged freezing of the foot but not of any kind or character of trauma. He testified that the plaintiff suffered from osteomyelitis for 3 or 4 years after 1938, and that this was a chronic infectious condition which broke out in different places up to and including 1958 and 1959 prior to November 13. He gave no fixed opinion as to a specific cause of what was found on December 12, 1959.

Two doctors testified by deposition. Neither of them gave any fixed opinion as to cause.

Three other physicians testified and these recited a lengthy history to which no objection was interposed and which met with no denial or contradiction. This history extended from 1938 to 1961. It covered in considerable detail the osteomyelitic condition with repeated outbreaks over the years. None of them gave it as his opinion that what the plaintiff said happened on November 13, 1959, caused the condition which followed that date.

One of them substantially said that ordinary activity, freezing, or trauma could activate the disease of osteomyelitis, but that in the light of the activities of the plaintiff after November 13, 1959, he did not think that what happened on that date was the cause of the condition.

Another said that ordinary activity, freezing, or trauma could activate osteomyelitis.

The third said that freezing could have been a cause, but not frostbite, and also that trauma was a possible cause, but in the light of what was disclosed, the delay in treatment, and continuance at work these were not causes.

In the light of this it becomes clear that there was testimony coming from the plaintiff that he suffered an unexpected and unforeseen event which happened suddenly and violently. There was circumstantial evidence to the contrary. The burden of proof in this respect was

on the plaintiff. If it be assumed that in this respect he has sustained his burden, he still had another burden which was to adduce evidence which by a preponderance showed that the accident at the time produced objective symptoms of an injury.

The plaintiff described no objective symptom or symptoms. No one else testified to the existence of objective symptoms at the time, and none were inferable or deducible from the evidence of the physicians who examined and treated him. The district court therefore did not err in its conclusion that the plaintiff failed to sustain the burden of proving his claim that he suffered an accidental injury within the meaning of the Workmen's Compensation Act.

The judgment of the district court is therefore affirmed.

AFFIRMED.

SIMMONS, C. J., not participating.