EDWARD J. EPSTEN, APPELLEE, v. HANCOCK-EPSTEN COMPANY, APPELLANT.

FILED JULY 3, 1917. No. 20084.

1. Master and Servant: WORKMEN'S COMPENSATION ACT: IMPAIRMENT OF EARNING POWER. Under the workmen's compensation act compensation cannot be awarded for the loss of a toe unless the injury has impaired the earning power of the employee. Rev. St. 1913, sec. 3662.

2. ———: ———: AMOUNT OF COMPENSATION. Under the workmen's compensation act, providing for compensation for partial disability at the rate of 50 per cent. of the "difference between the wages received at the time of the injury and the earning power of the employee thereafter," the fact that the employee earns higher

wages after than before the injury will not deprive him of compensation to which he is entitled, where he receives higher wages because he has by education and training fitted himself for more remunerative employment. Rev. St. 1913, sec. 3662.

3. ———: ———: MEDICAL EXPENSES.  Under the workmen's compensation act, declaring that the employer shall be liable for "reasonable medical and hospital services" rendered "during the first twenty-one days after disability begins," an employer who has provided necessary medical attention during the three weeks subsequent to an injury sustained by an employee is not liable for medical expenses subsequently incurred by the latter after blood poisoning developed. Rev. St. 1913, sec. 3661.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Affirmed as modified.*

*Nolan & Woodland,* for appellant.

*Montgomery, Hall & Young, contra.*

ROSE, J.

This is an action to recover compensation for an injury sustained by plaintiff April 29, 1915, while in the employ of defendant.  In operating a press, plaintiff placed his left foot under the plunger, which crushed his great toe. Medical attention was promptly furnished by defendant. Plaintiff returned to his employment May 18, 1915, and worked until May 26, 1915, when blood poisoning developed.  He then went to a hospital, where his injured toe was amputated at the second joint.  In the fall of that year he attended a business college, returning to work in defendant's office May 20, 1916.  At the time of his injury, April 29, 1915, his wages were $7 a week.  When he returned nearly a year later, he received $10 a week.  At the time of the trial he was receiving $15 a week.  The district court awarded him $5 a week to May 20, 1916, and in addition held: "That plaintiff is also entitled, for the permanent injury to his foot, which injury has permanently lessened the use of such foot, to the sum of $1 a week for 245 weeks, being the sum of $245.  Plaintiff's claim for medical and hospital expenses incurred after blood poisoning developed was disallowed.  Defendant has appealed

from the award of $245, and plaintiff has filed a cross-appeal from the order disallowing his claim for medical and hospital expenses.

Defendant contends that, since plaintiff's earning capacity has not been reduced because of the injury, he is entitled only to compensation for the actual loss of earnings from the time of receiving the injury, April 29, 1915, to May 20, 1916, and that the award of compensation for the permanent injury to his foot is not authorized by the statute. The statute makes provision for compensation for total disability, for "disability resulting from permanent injury" on account of the loss of, or "permanent loss of the use of," an arm, hand, leg, foot, or eye, and, in other cases of partial disability, the compensation "shall be fifty per centum of the difference between the wages received at the time of the injury and the earning power of the employee thereafter." Rev. St. 1913, sec. 3662. The statute does not, as is the case in many of the states, make provision specifically for the loss of toes or fingers. Unless such injuries cause the "permanent loss of the use" of the foot or hand, the compensation seems to be determined by the "difference between the wages received at the time of the injury and the earning power of the employee thereafter." Rev. St. 1913, sec. 3662. The statute conclusively presumes that for the loss of, or the permanent loss of the use of, a hand, arm, foot, leg, or eye, the proper compensation is 50 per cent. of the wages for a specified number of weeks, respectively. For any other partial disability, compensation is to be determined by proof of impairment of earning power. If an employee after his injury receives the same or higher wages than before, ordinarily that would indicate that his earning power had not been impaired. Such evidence, however, would not necessarily be conclusive, since after the injury he might for various reasons receive higher wages, though his earning power had been impaired by the injury. A general advance in wages might enable the injured employee to secure the same wages after as before the injury, though partially disabled. In the

Epsten v. Hancock-Epsten Co.

present case it is a reasonable inference from the evidence
that plaintiff received higher wages because he had by edu-
cation and training fitted himself for more remunerative
employment. There is evidence tending to show that he is
unable to perform the duties of his former employment.
The evidence justifies a finding that his earning capacity
has been impaired. He concedes, however, that the award
of a lump sum was erroneous, and in that respect the
judgment will be modified.

On cross-appeal plaintiff contends that the court erred
in refusing to make an award for medical and hospital ex-
penses incurred after blood poisoning developed, and cites
*Johansen v. Union Stock Yards Co.*, 99 Neb. 328. It was
there held that, where an accident which at first appeared
to be trivial later resulted in a diseased condition de-
stroying the sight of an eye, the "injury," within the mean-
ing of the statute, occurred when the diseased condition
culminated, there being no apparent "violence to the physi-
cal structure of the body" at the time the accident oc-
curred. In the present case an injury was apparent at
the time of the accident. Plaintiff was then disabled, and
did not return to work for nearly three weeks. During
that time his employer provided the necessary medical at-
tention. The medical and hospital expenses for which
plaintiff seeks compensation were not rendered "during the
first twenty-one days after disability" began. Rev. St.
1913, sec. 3661. His claim therefor was properly disal-
lowed.

The judgment of the district court, modified to require
weekly payments instead of awarding a lump sum, is
affirmed.

MODIFIED AND AFFIRMED.

LETTON and CORNISH, JJ., dissent.