WINIFRED M. MCNEIL, APPELLANT, v. OMAHA FLOUR MILLS COMPANY, APPELLEE.

FILED JUNE 28, 1935. No. 29557.

*Wright & Kennedy* and *Peter & Peter*, for appellant.

*Kennedy, Holland & DeLacy* and *Edward J. Svoboda,* contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ.

GOSS, C. J.

Plaintiff sued for compensation because of the death of her husband, Michael W. McNeil, while employed by defendant. She claimed the death was by reason of a heatstroke or sunstroke. The compensation commissioner made an award in her favor. On appeal the district court denied compensation on the ground that the employee was not subjected to a greater hazard from the heat than that to which the public in general or workmen in the locality were subject. Plaintiff appealed. The case is for trial *de novo* here.

Plaintiff's first assignment is that the district court erred in not dismissing defendant's petition on appeal from the award of the compensation commissioner. The basis for this assignment is that the district court had no jurisdiction to entertain the appeal for reasons set forth at great length in her brief. The most important of these, in our judgment, is that, in its petition on appeal, defendant did not reverse the title and designate the party filing such petition on appeal as plaintiff and the party upon whom it was served as defendant. Counsel for plaintiff base this and other reasons upon their interpretation of section 48-139, Comp. St. 1929. We find no such requirement in that section. It says: "In case either party refuses to accept the recommendation or awards of the compensation commissioner, either party may submit to the district court a verified petition," etc. We find no direction there or elsewhere that, when an employer has an award rendered against him, he must on appeal allocate himself as plain-

tiff and his adversary as a defendant. Observation shows the practice has followed both methods, but usually that pursued here. It preserves the natural and logical arrangement of the parties and saves confusion of their identity, especially when appeals are taken to the supreme court. It seems to have been the consistent practice, particularly since the law was amended in 1929, to designate the parties on appeal both to the district court and to the supreme court as they were designated before the compensation commissioner. An examination of the pleadings in the district court shows that defendant filed its petition in due time setting forth the issue before the compensation commissioner and the award. Plaintiff did not make a special appearance, but appeared generally and moved to dismiss the appeal and to affirm the award on about the same grounds as are set up here. When the motion was overruled, plaintiff answered generally the petition of defendant. We are unable to find any merit in the assignment that jurisdiction of the appeal was lacking in the district court. We are of the opinion that the appeal to the district court shows appellant took every step required by the statutes to be taken to perfect the appeal.

The evidence shows that plaintiff is the widow of Michael W. McNeil, who was about 58 years of age when he died on the 19th day of July, 1934, while employed by the Omaha Flour Mills Company as a watchman at its plant on the railroad tracks at about the foot of B, C and D streets at Twenty-ninth street, Omaha (South Side, formerly South Omaha). He had been employed as a watchman for defendant for about eight months. This service had been interrupted in the spring of 1934 by a few days' illness, when he had pleurisy, resulting from a cold. The doctor, who attended him then, testified that he examined his heart and there was nothing wrong with it. This was the only illness he had suffered for five years. He was apparently a strong man, nearly six feet tall, and weighing about 210 pounds. At the period when he was stricken, his hours as a watchman were from 3 p. m. to 11 p. m.

From 3 to 6 p. m. his duties allowed him to be in what was termed the mill-yard or courtyard, or required him to be watching for the safety of children who came to cars on the track running east of the plant to seek wheat that had been left in cars unloaded there. The mill-yard was protected from movements of air by buildings on the south, west and north and was open only at the east. After 2 or 3 o'clock in the afternoon it was shaded. When watching for children on the right of way, he had either to be in the sun or get under a one-story building with an iron roof, where it was rather hot in warm weather.

Deceased was stricken at about 5:30 p. m. of July 19, 1934. He was found by a witness, offered by plaintiff, at about 5:30, approximately 18 feet from a chair in which he often sat. He was "slumped against" the wall of one of the buildings. A doctor who was called and paid by defendant arrived at the plant and found the patient in the boiler-room, unconscious. He administered strychnine by hypodermic and had the patient removed to the hospital. He died on the way. The doctor did not take the patient's temperature, but estimated it was 104 or more. He had had about 9 years' experience in hospitals of the best repute in the country and in practice. In the opinion of the doctor, McNeil died of a "heat-stroke or heat exhaustion." Two internes who were present when he was received at the hospital testified that, in their opinion, his body temperature was 108.

Shade temperature and wind observations at the weather bureau, high in the air at the place of recording in Omaha, several miles away, showed the temperature on that day to have been 108 degrees at 3 o'clock, with a south wind of 14 miles an hour; 110 degrees at 4 and 5 o'clock, and 108 degrees at 6 o'clock, with a south wind of 11 miles an hour from 4 to 6 o'clock.

Defendant's plant was down quite a grade running several blocks west from the residence district west of which it was built. When McNeil was in the mill-yard he was almost entirely cut off from any movement of the air.

When he was on the right of way he was in the sun and in a much higher temperature naturally than when in the shade of the mill-yard. If he sat under the shed on a bench to watch and keep the children of the neighborhood from trespassing, he was, of course, out of any beneficial influence of the prevailing breeze of that afternoon from the south. We do not know, as a proved positive fact, just what the temperature on the ground in McNeil's area of duty was, but it is a fair inference that it was several degrees higher than it was where the weather bureau records were made, in the shade and 200 feet above the ground, with free access to the breeze. The conditions where he worked were quite different from those of other workmen in that "locality" because of the lower location of the plant and the physical obstructions to the breeze, which is quite a factor in the heat conditioning of the human body.

The evidence shows that deceased was apparently a healthy man, free from any habits that would make him more susceptible to the heat than others in similar circumstances. It proves that he came to his death by heat exhaustion or heat prostration. The rule is: "Heat prostration may be a compensable accident, under the workmen's compensation law, if the workman is subjected to a greater hazard from the heat than that to which the public generally in that locality is subject." *Herbert v. State*, 124 Neb. 312.

On consideration *de novo* of the whole evidence, we are of the opinion that McNeil's death arose out of and in the course of his employment. The award of the compensation commissioner was right. The trial court erred in not adopting the same theory and awarding the same compensation. The judgment of the district court is reversed, with instructions to enter a judgment in the same terms as the award of the compensation commissioner.

REVERSED.