ARTHUR E. ANDERSON, APPELLEE, V. EARL COWGER, DOING BUSINESS AS COWGER SALES COMPANY, APPELLANT.

65 N. W. 2d 51

Filed June 11, 1954. No. 33488.

Robert H. Downing, for appellant.

George F. Johnson, for appellee.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This appeal from the district court for Nuckolls County involves a workmen's compensation claim. The district court found in favor of claimant Arthur E. Anderson and awarded him compensation at the rate of $26

per week, or a total of $559, for 21½ weeks for total temporary disability and $6.50 per week, from and after July 31, 1952, but for not more than 278½ weeks, for permanent partial disability of 25 percent. The court also awarded claimant $321 for doctor and hospital bills. From this award Earl Cowger, doing business as Cowger Sales Company, appealed and claimant has cross-appealed.

The questions raised by the appeal, as stated by the parties, are as follows: Is the evidence sufficient to show appellee suffered a compensable injury caused by an accident arising out of and in the course of his employment; if an award is justified what should be the extent thereof; and if an award is justified and the extent thereof determined, is the appellant entitled to any credits thereon by reason of the payments he has made to appellee?

On an appeal to this court in a workmen's compensation case the cause will be considered de novo upon the record before us. See, Gilbert v. Metropolitan Utilities Dist., 156 Neb. 750, 57 N. W. 2d 770; Tucker v. Paxton & Gallagher Co., 153 Neb. 1, 43 N. W. 2d 522; Beam v. Goodyear Tire & Rubber Co., 152 Neb. 663, 42 N. W. 2d 293; Solheim v. Hastings Housing Co., 151 Neb. 264, 37 N. W. 2d 212; Werner v. Nebraska Power Co., 149 Neb. 408, 31 N. W. 2d 315; Herbert v. State, 124 Neb. 312, 246 N. W. 454.

Appellant was, at all times here material, the owner and operator of a wholesale grocery business at Superior, Nebraska. Appellee had been working for appellant about 21 years. At the time herein material he was employed as a combination salesman and warehouseman, working on the first 3 days of each week as a salesman and on the last 3 days thereof as a warehouseman. As a salesman he sold merchandise and took orders therefor in the towns surrounding Superior. These towns included Guide Rock, Nebraska. As a warehouseman he filled orders, loaded and unloaded trucks, and gen-

erally handled merchandise. For rendering these services appellee received $60 a week.

On Monday, March 3, 1952, appellee was working as a salesman. That morning, although the traveling conditions were bad due to a snowstorm, he drove to Guide Rock. Guide Rock is about 20 miles from Superior. There he called on the trade and took their orders. After he completed his work at Guide Rock it 'was his intention to drive on to Red Cloud, Nebraska. However, because the storm kept getting worse and the snow was beginning to block the highways, he decided to return to Superior. He started back shortly after 1 p. m., followed in another car by a salesman with the name of Kirchhoff. Kirchhoff was driving his own car. These two salesmen had arranged to drive back to Superior at the same time. Pursuant to their arrangement appellee took the lead. About 4 miles north of Superior appellee, as he was traveling east on Highway No. 3, ran into a snowdrift or snowbank located thereon. This occurred at a point just west of where Highway No. 3 intersects with Highway No. 14, the latter running north from Superior.

In order that a recovery may be had in an action under the workmen's compensation law it must be proved that an accident occurred arising out of and in the course of employment which accident produced injury that resulted in disability or death. Ruderman v. Forman Bros., 157 Neb. 605, 60 N. W. 2d 658; Hassmann v. City of Bloomfield, 146 Neb. 608, 20 N. W. 2d 592; Pixa v. Grainger Bros. Co., 143 Neb. 922, 12 N. W. 2d 74; Herbert v. State, *supra.*

In order to recover the burden is on the claimant to prove the foregoing by a preponderance of the evidence. Ruderman v. Forman Bros., *supra;* Meester v. Schultz, 151 Neb. 614, 38 N. W. 2d 739; Hassmann v. City of Bloomfield, *supra;* Hamilton v. Huebner, 146 Neb. 320, 19 N. W. 2d 552, 163 A. L. R. 1; Roccaforte v. State Furniture Co., 142 Neb. 768, 7 N. W. 2d 656; Herbert v. State, *supra.*

Such facts must be proved by the claimant by sufficient evidence leading to the direct conclusion, or by a legitimate legal inference therefrom, that such an accidental injury occurred and caused the disability. There must be shown a causal connection between an accident suffered by the claimant and the cause of his disability. Rose v. City of Fairmont, 140 Neb. 550, 300 N. W. 574; Pixa v. Grainger Bros. Co., *supra.*

An accident, within the meaning of the statute, shall be construed to mean an unexpected or unforeseen event happening suddenly and violently with or without human fault and producing at the time objective symptoms of injury. § 48-151, R. R. S. 1943; Ruderman v. Forman Bros., *supra;* Muff v. Brainard, 150 Neb. 650, 35 N. W. 2d 597.

Symptoms of pain and anguish, such as weakness, pallor, sickness, nausea, expressions of pain clearly involuntary, or any other symptoms indicating a deleterious change in the bodily condition may constitute objective symptoms as required by our statute. Beam v. Goodyear Tire & Rubber Co., *supra;* Manning v. Pomerene, 101 Neb. 127, 162 N. W. 492.

In considering the sufficiency of the proof it should be remembered the rule of liberal construction, as it relates to the workmen's compensation law, applies to the law and not to the evidence offered to support a claim by virtue of the law. The rule does not dispense with the necessity that claimant prove his right to compensation; that is, it does not permit a court to award compensation when the required proof is lacking. Beam v. Goodyear Tire & Rubber Co., *supra;* Hassmann v. City of Bloomfield, *supra;* Hamilton v. Huebner, *supra.*

At the place where appellee ran into a snowdrift or snowbank the state's highway department maintenance employees were trying to open up a passageway through the snow that had drifted onto Highway No. 3. They were using a snowplow for this purpose and bucking

into the drift trying to get an opening through it. They had not been able to do so.

The wind was blowing the snow from the north at 40 to 50 miles an hour. Appellee, because of this snow, was at the time momentarily driving blind and consequently did not have an opportunity to apply his brakes before he hit the snowdrift or snowbank. He hit it while driving at a speed of about 25 miles an hour. When he hit it his car came to a sudden stop. At the time he was holding the steering wheel with both hands and the sudden stop jarred his arms and shoulders. After he had stayed in his car for about 5 minutes he smelled gas fumes so he decided to get out, but because of the depth to which the snow was banked around his car he was not able to open any of its doors. He therefore rolled down the window of the right door and crawled out onto the snow. After getting to where he could walk he waded through the snow a distance estimated to be between 30 and 50 yards. In going this distance the snow was over his knees and, because of the force of the wind, he found it difficult to stand up and walk. When he finally reached the highway department's snowplow he got into the cab thereof.

We think these facts show appellee suffered an accident that arose out of and in the course of his employment. In this regard we have not overlooked the fact that appellee testified his exertion in walking through the snow from his car to the snowplow was no greater than that normally incident to his employment as a warehouseman where his duties included lifting sacks of sugar and salt weighing up to 100 pounds each and stacking them in piles as high as he could reach. In this respect we have often said that mere exertion, which is not greater than that ordinarily incident to the employment, cannot of itself constitute an accident within the meaning of the workmen's compensation law. See, Muff v. Brainard, *supra;* Hamilton v. Huebner, *supra;* Roccaforte v. State Furniture Co., *supra;* Rose v. City

of Fairmont, *supra;* Gilkeson v. Northern Gas Engineering Co., 127 Neb. 124, 254 N. W. 714.

But here the accident did not consist solely of appellee's exertion in wading through the snow. This had been preceded by the jarring he received when his car came to a sudden stop. There was also the additional fact that he was walking through a snowstorm in freezing weather with the wind blowing up to 50 miles an hour.

Considering these other elements, we think the exertion here was greater than that ordinarily incident to appellee's employment and that the facts of the case cause it to fall more nearly within a situation comparable to those involved in Skelly Oil Co. v. Gaugenbaugh, 119 Neb. 698, 230 N. W. 688; and Manning v. Pomerene, *supra.*

We also think the facts of this case are comparable to those wherein compensation has been allowed when the employment in any particular case brings with it greater exposure to the elements than those to which the general public in the community were exposed. See, Laudenklos v. Department of Roads & Irrigation, 132 Neb. 234, 271 N. W. 790; Herbert v. State, *supra;* McNeil v. Omaha Flour Mills Co., 129 Neb. 329, 261 N. W. 694; Young v. Western Furniture & Mfg. Co., 101 Neb. 696, 164 N. W. 712, L. R. A. 1918B 1001.

We come then to the question of "objective symptoms of an injury" within the meaning of section 48-151, R. R. S. 1943. We have already set forth what may constitute such.

Shortly after appellee got in the cab of the snowplow its operator started for Superior. It took him somewhere between 15 and 20 minutes to get to the Hill Terminal filling station just north of Superior on Highway No. 14. About half way there appellee developed cramps. When the snowplow got to the station it stopped and appellee got out and walked into the station and went as far as the far end of a counter located there-

in and there leaned on it for support. Suddenly he staggered from the counter, his face turned kind of black, his mouth and nose filled up, and he passed out. Dr. Mason of Superior was called and attended him, taking him to the Brodstone Memorial Hospital in Superior. Appellee's condition was diagnosed as acute occlusion of the coronary artery.

In the case of Flammer v. Bethlehem Steel Co., 268 App. Div. 944, 51 N. Y. S. 2d 258, affirmed in Flammer v. Bethlehem Steel Co., 295 N. Y. 817, 66 N. E. 2d 588, it was held that the death of a plant patrolman from coronary occlusion which occurred while he was working in unusual and extreme weather conditions and while traveling through heavy snow and exposed to cold was compensable.

We announced the same principle in Schirmer v. Cedar County Farmers Telephone Co., 139 Neb. 182, 296 N. W. 875. Therein we said that when an employee suffers an accident in the course of his employment and, as a direct result thereof, suffers a coronary thrombosis the disability resulting therefrom is compensable.

The question then arises, has appellee established a causal connection between the accident he suffered and the cause of his disability?

Appellee was, at the time, 41 years of age, 5 feet 7 inches in height, and weighed between 185 and 190 pounds. He had always been in good health and had not needed the services of a doctor since getting out of school in the twenties. However, he had been examined by a doctor when he entered the armed services of his country in May 1943, and again when discharged therefrom in November 1945. On neither of these occasions did the doctor examining him make any comment about his health. Dr. Mason, who attended appellee at the Hill Terminal filling station very shortly after he became ill and who attended him all during his illness, testified his then condition had not necessarily been preceded by some diseased condition of the arteries of

his heart but that such condition may or may not have existed. He testified that in his opinion appellee had suffered coronary occlusion secondary to overexertion. He based his opinion on the history given him by appellee which was as follows: "* * * that he had stalled his car in the snowdrift and in the process of getting out of the car and attempting to dig out, he overexerted. It was in a very severe blizzard, and shortly after that on the way back when being brought back to town in a highway department truck he began having heart pain or pain in his chest * * *. He was in cramps at the time I examined him, * * *."

We have often said that a compensation award cannot be based on possibilities or probabilities but must be based on sufficient evidence that the claimant incurred a disability arising out of and in the course of his employment. Ruderman v. Forman Bros., *supra;* Beam v. Goodyear Tire & Rubber Co., *supra;* Meester v. Schultz, *supra;* Muff v. Brainard, *supra;* Hassmann v. City of Bloomfield, *supra;* Hamilton v. Huebner, *supra;* Pixa v. Grainger Bros. Co., *supra.*

In this respect appellant calls our attention to the fact that the history of the case on which Dr. Mason based his opinion contained the statement that appellee overexerted himself "in the process of getting out of the car and attempting to dig out," whereas the fact is he did so in the process of getting out of the car and wading some 30 to 50 yards through snow over his knees in a snowstorm with winds up to 50 miles an hour. In this respect appellant cites the following from our opinion in Hamilton v. Huebner, *supra:* " 'The value of the opinion of an expert witness is dependant on, and is no stronger than, the facts on which it is predicated. The opinion has no probative force unless the premises upon which it is based are shown to be true.' Williams v. Watson Bros. Transportation Co., *supra* (145 Neb. 466, 16 N. W. 2d 199)."

Dr. Mason went on to testify that appellee's exposure

to the blizzard conditions and the jar he received when his car ran into the snowdrift were factors in causing his heart attack. In fact he testified that all of the factors to which he had testified caused appellee's condition. Happening when it did, with reference to the accident, we find such to be the fact.

Having come to the conclusion that the evidence establishes appellee suffered injury from the accident, which arose out of and in the course of his employment that resulted in his disability, the question arises, what was the extent of such disability?

"For workmen's compensation purposes 'total disability' does not mean a state of absolute helplessness, but means disablement of an employee to earn wages in the same kind of work, or work of a similar nature, that he was trained for, or accustomed to perform, or any other kind of work which a person of his mentality and attainments could do." Elliott v. Gooch Feed Mill Co., 147 Neb. 309, 23 N. W. 2d 262. See, also, Elliott v. Gooch Feed Mill Co., 147 Neb. 612, 24 N. W. 2d 561.

Appellee remained in the hospital for 3 weeks. Thereafter he was taken to his home. He stayed at home until August 1, 1952, in order to regain his health. There is no question but what, during this period of time, he was temporarily totally disabled.

On August 1, 1952, he returned to work. For about a month he was only able to work for about 2 hours in the mornings. During the second month he worked half days. Thereafter he put in full time but only doing sales work as Dr. Mason had advised him not to do certain things such as heavy lifting. This prevented him from doing his former work as a warehouseman. Appellee is still under Dr. Mason's care, the doctor checking him about once a month. Dr. Mason testified that while appellee can do light work he cannot do a laborer's work and, because of his condition, thinks his present disability is 25 percent. He thinks appellee may have further improvement. Appellee has at all times, since

March 3, 1952, drawn his regular pay check of $60 per week.

Section 48-121, R. R. S. 1943, provides by subsection (2), that: "For disability partial in character, * * * the compensation shall be sixty-six and two-thirds per cent of the difference between the wages received at the time of the injury and the earning power of the employee thereafter; * * * but not beyond three hundred weeks after the date of the accident causing disability. Should total disability be followed by partial disability, the period of three hundred weeks mentioned in this subdivision shall be reduced by the number of weeks during which compensation was paid for such total disability."

"Earning power," as used in subsection (2), section 48-121, R. R. S. 1943, is not synonymous with wages, but includes eligibility to procure employment generally, ability to hold a job obtained, and capacity to perform the tasks of the work, as well as the ability of the workman to earn wages in the employment in which he is engaged or for which he is fitted. See Micek v. Omaha Steel Works, 136 Neb. 843, 287 N. W. 645.

This is more fully discussed in the foregoing-cited opinion as follows: "The test, under subdivision 2 of section 48-121, supra, is whether any element of plaintiff's earning power has been impaired. The term wages is not a complete synonym for earning power. The ability to earn wages in one's employment is, obviously, a primary base in the admeasurement of earning power, but several other component factors are also involved. These include eligibility to procure employment generally, ability to hold a job obtained, and capacity to perform the tasks of the work in which engaged. If any one or more of these four elements of earning power are affected and only partially impaired, as the result of an accident arising out of and in the course of employment, and the disability is not one covered by subdivision 3 of section 48-121, Comp. St. 1929, the right to compensation is

governed by subdivision 2 of such section. The right in such cases rests, as we have indicated, upon the fact that some preexisting element of earning capacity has been impaired." Micek v. Omaha Steel Works, *supra*.

Thus it will be seen that the compensation provided for by subsection (2) of section 48-121, R. R. S. 1943, is the difference between the wages received at the time of the injury and the earning power of the employee thereafter, that is, any partial disability compensation is to be determined by proof of impairment of earning power. If, after his injury, an employee receives the same or a higher wage than before that would be indicative of the fact that his earning power had not been impaired. Such fact, however, would not necessarily be conclusive since after the injury the employee might, for various reasons, receive the same or higher wages although his earning power had been impaired. Epsten v. Hancock-Epsten Co., 101 Neb. 442, 163 N. W. 767.

Here there is evidence tending to show that appellee is unable to perform all of the duties of his former employment and that his eligibility to procure employment generally has been reduced. We find the evidence justifies a finding that his earning power has been impaired. Certainly during August and September 1952, it was more than 25 percent. In Dr. Mason's opinion appellee has and is suffering a 25 percent permanent partial disability. We think the evidence sustains his opinion in this regard. If appellee improves, as Dr. Mason thinks he may, then appellant can take proper action based thereon.

We come then to the extent of the compensation that should be allowed for a 25 percent impairment. This is the issue to which appellee's cross-appeal is directed. The trial court fixed the amount at $6.50 per week. The statute fixes the amount at 66⅔ percent of the difference between the wages he was receiving and the earning power of the employee thereafter. As stated in Micek v. Omaha Steel Works, *supra:* "* * * the measure of

compensation in such a case is 66⅔ per cent. of the amount * * * or percentage of impairment in general earning capacity, applied to the wages received by the workman at the time of the injury, * * *."

Applying this formula to the wages appellee was receiving on March 3, 1952, the amount appellee was entitled to for 278½ weeks was $10 per week instead of $6.50.

We come then to the question of whether appellant should be given credit on these allowances out of the $60 per week that he has at all times been paying appellee. We think the following general principles quoted from Volume 2 of Prof. Arthur Larson's The Law of Workmen's Compensation are sound and have application:

"If the payment of wages was intended to be in lieu of compensation, credit for the wages is allowed." § 57.41, p. 18.

"* * * the employer can claim no credit if he denied his workmen's compensation liability while paying the wages." § 57.43, p. 20.

As to the first of these principles the author states: "However, since there is seldom any direct evidence on whether such an intention lay behind the payment, it must be inferred from the circumstances surrounding the payment." § 57.41, p. 18. He then goes on to say: "If he is paid his regular wage although he does no work at all, it is a reasonable inference that the allowance is in lieu of compensation." § 57.42, p. 19.

We have said of the provisions of the Workmen's Compensation Act that: "* * * the public has an interest in their due enforcement and observance which it is the duty of the court to protect, even without regard to the wishes of the parties. The act of which they form a part creates new remedies and new liabilities. The manner in which it operates is to be found within the legislation itself." Ashton v. Blue River Power Co., 117 Neb. 661, 222 N. W. 42.

Section 48-137, R. R. S. 1943, provides: "* * * all claims for compensation shall be forever barred unless, within one year after the accident, the parties shall have agreed upon the compensation payable under this act, or unless, within one year after the accident, one of the parties shall have filed a petition as provided in section 48-173. * * * Where, however, payments of compensation have been made in any case, such limitation shall not take effect until the expiration of one year from the time of the making of the last payment."

In Ashton v. Blue River Power Co., *supra,* we quoted with approval from Chase v. Emery Mfg. Co., 271 Pa. St. 265, the following construction of a like statute: "This section was placed in the act to prevent imposition on unwary employees; that is, to prevent money being paid for a period of time after an injury under some verbal arrangement, causing the employee to neglect presenting the agreement in some form as provided by law. The year limitation under the act, would begin to run from the last payment."

" 'The workmen's compensation act "is one of general interest, not only to the workman and his employer, but as well to the state, and it should be so construed that technical refinements of interpretation will not be permitted to defeat it." ' Baade v. Omaha Flour Mills Co., 118 Neb. 445." Speas v. Boone County, 119 Neb. 58, 227 N. W. 87.

In construing a similar statute the Supreme Court of Illinois in Olney Seed Co. v. Industrial Commission, 403 Ill. 587, 88 N. E. 2d 24, laid down the following rules:

"* * * that the making of a claim within six months after the last weekly payment of the employer did not satisfy the requirements of section 24 of the Workmen's Compensation Act, where the evidence showed that the employer denied all liability under the act, and had made the payments voluntarily, without reference to the act, to help the employee.

"* * * that where an employer, with knowledge of

an accidental injury, makes payments to an injured employee during a period of time when the employee is unable to work, and liability under the compensation act is not denied, such payments will be construed to have been made in consequence of the employer's liability. In that case a claim for compensation filed within six months after the last payment of wages was deemed to have been filed in apt time."

That court, in discussing the question here involved, said: "We are of the opinion that the principle announced in those cases is applicable to the present case, where payments during a period of temporary total incapacity are involved. Those cases have construed wages paid by an employer who did not deny liability under the act, and who had knowledge of the employee's accidental injury, to be payment of compensation as contemplated by the act, for the purpose of fixing the time in which an employee must file a claim. Simple justice and consistency, in the absence of any statutory direction to the contrary, demands that payments of wages under such circumstances operate as a discharge, or partial discharge as the case may be, of the employer's monetary liability under the act. The payment of wages by the employer cannot be construed as having been made under the act for one purpose and then, under the same factual situation, be construed as not having been made under the act for another purpose."

Conversely, where the evidence shows the employer denied all liability under the act, and had made the payments voluntarily, without reference to the act, the payment of wages under such circumstances should not operate as a discharge, or partial discharge, as the case may be, of the employer's monetary liability under the act.

This court has often held, as already stated in the opinion, that if, after his injury, an employee receives the same or a higher wage than before that would be indicative of the fact that his earning power had not

been impaired but that such fact would not necessarily be conclusive since after the injury the employee might, for various reasons, receive the same or higher wages although his earning power had been impaired. The latter is the situation here after appellee returned to work. To say, however, that the employer is entitled to credit on the compensation allowed for partial disability from the wages paid is, in effect, to make such a rule meaningless unless the employee seeks employment elsewhere.

The general rule, in this regard, is stated in Department of Motor Vehicles v. Industrial Accident Commission, 14 Cal. 2d 189, 93 P. 2d 131, as follows: "* * * where an employee has received a permanent disability but is thereafter able to return to work and earn a salary for such service rendered, he is entitled to receive both disability indemnity payments and salary."

In McGhee v. Sinclair Refining Co., 146 Kan. 653, 73 P. 2d 39, 118 A. L. R. 725, that court held that the action of the commissioner in requiring in his award that the employer should have credit on the amount due the employee because of the wages paid to the employee between the time of his injury and the date of the award would bring about the practical result of nullifying the effect of the authorities in that jurisdiction to the effect that the fact that the workman returned to work for the same employer or for another employer at the same or higher wages does not prevent him from receiving compensation when the workmen's compensation commission and the trial court have found on substantial evidence that he has sustained a compensable injury.

After October 1, 1952, it is apparent appellee was giving full services as a salesman for the wages he was then being paid. Under such a situation it would certainly be inconsistent to say that part of what he earned should be credited to the appellant on his liability for compensation owing the appellee.

Basically wages and compensation, although arising out of an employer-employee relationship, are not alike. Wages arise out of the relationship, as such, while compensation arises only if the employee suffers an injury by reason of an accident arising out of and in the course of his employment, which injury causes either disability or death. The latter is in lieu of the employee's former common law right to recover damages in case of negligence. To say that the payment of wages is in fact the payment of compensation, when liability for the latter is denied, is both inconsistent with the facts and the intent of the employer.

We are cited to our holding in Elliott v. Gooch Feed Mill Co., 147 Neb. 612, 24 N. W. 2d 561, as a basis for allowing credit for payment here made, but in that case liability was admitted and compensation voluntarily paid for 16 weeks and 2 days. It was only after the doctor had advised the employee that he could return to work, and he did so, that the employer quit paying compensation and paid him wages. He returned to work on March 6, 1944, but had to quit on May 1, 1944, because he was not able to perform the work. The doctor's advice had not proved to be correct. Under these circumstances, and properly so, the employer was held to be entitled to receive credit on his compensation liability for the wages paid because it is apparent there was never any intention on the part of the employer to deny liability if, in fact, the employee was still disabled.

The record shows that appellee made no actual demand upon appellant for compensation until sometime shortly after he returned to work on August 1, 1952, and there is nothing in the record to affirmatively show appellant actually denied such liability at any time during the period from March 3 to July 31, 1952, while appellee was temporarily totally disabled. Thus the evidence adduced fails to overcome the reasonable inference that the payment of wages during this period was in lieu of compensation. We, therefore, come to the conclusion that

appellant is entitled to receive credit for the payment of $559 which was allowed appellee for temporary total disability for the 21½ weeks from March 3 to July 31, 1952.

We therefore affirm that part of the district court's decree awarding appellee compensation for temporary total disability at the rate of $26 per week for 21½ weeks or a total of $559, and the sum of $321 for doctor and hospital bills, but direct that appellant be given credit for having paid the $559 so awarded. We modify that part of the decree awarding him $6.50 per week, from and after July 31, 1952, but not for more than 278½ weeks, for permanent partial disability of 25 percent and direct the trial court to enter a decree in behalf of appellee in that regard awarding him $10 per week, from and after July 31, 1952, but for not more than 278½ weeks, for permanent partial disability of 25 percent.

Under authority of section 48-125, R. R. S. 1943, we award appellee an attorney's fee of $250 for services of his attorney in this court, same to be taxed as costs. All costs are taxed to appellant.

AFFIRMED IN PART, AND IN PART
MODIFIED WITH DIRECTIONS.