308 N.W.2d 734 (1981)
209 Neb. 539
Raymond J. RIHA, Appellee,
v.
ST. MARY'S CHURCH AND SCHOOL, INC., et al., Appellants.
No. 43717.
Supreme Court of Nebraska.
July 24, 1981.
*735 Knudsen, Berkheimer, Beam, Richardson & Endacott, Lincoln, for appellants.
James M. Egr of Egr & Birkel, David City, for appellee.
Heard before KRIVOSHA, C. J., and BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ.
BOSLAUGH, Justice.
This is an appeal in a proceeding under the Workmen's Compensation Act. The plaintiff was injured on December 31, 1977, while employed as a custodian and maintenance man by the defendant St. Mary's Church and School, Inc., in David City, Nebraska. While spreading ice remover over the church steps in the course of his employment, the plaintiff slipped and fell. Plaintiff received compensation for an injury to his hip and sought additional compensation *736 in this proceeding for an aggravation of a preexisting condition in his low back.
After a hearing before a single judge, the plaintiff received an award for temporary total disability and medical and hospital expenses. On rehearing before a threejudge panel of the Workmen's Compensation Court, with one judge dissenting, the plaintiff again received an award for temporary total disability and medical and hospital expenses. The court found that the temporary total disability would continue for an indefinite period of time, and in the event the temporary disability ceased, the plaintiff would be entitled to compensation for any permanent partial disability due to the accident and injury. The defendants have appealed.
It is undisputed that the plaintiff was in the course of his employment at the time of his injury on December 31, 1977. The issue which must be determined is whether the evidence will sustain the finding of the Workmen's Compensation Court that the injury arose out of the plaintiff's employment. This question must be determined by an analysis of the medical testimony in the record concerning any causal connection between the fall and the disability of the plaintiff.
The findings of fact made by the compensation court after rehearing will not be set aside on appeal unless clearly wrong. Meyer v. First United Methodist Church, 206 Neb. 607, 294 N.W.2d 611 (1980). However, where there is not sufficient competent evidence in the record to warrant the making of the award, or the findings of fact made by the Workmen's Compensation Court do not support the award, this court must modify, reverse, or set aside the award. Neb.Rev.Stat. § 48-185 (Reissue 1978).
The plaintiff in this case has a long history of back problems dating back to 1954 when he was injured in a fall from a hayrack. In 1958 that injury was diagnosed as an L5-S1 disc injury and a laminectomy was performed.
On January 15, 1963, the plaintiff again injured his back when he slipped and fell on ice. As a result of the 1963 injury a fusion operation at L3-4, L4-5 was performed to relieve nerve root symptoms and instability in his back. Following this surgery the plaintiff testified that he was unable to bend normally and compensated by using his knees and hips when stooping to pick up objects. Dr. Goetowski, the treating surgeon, estimated the plaintiff had a 5 to 10 percent permanent partial disability to the body as a whole following the second surgery.
The evidence is in conflict as to whether the plaintiff experienced back pain following the second surgery. The plaintiff testified he did not have back pain again until after the December 31, 1977, fall. However, plaintiff's treating physician, Dr. Rudolph, indicated that the plaintiff complained of chronic low back pain in 1975. In July 1975 the plaintiff complained of burning pain in his feet and legs. Dr. Miller, as a consulting physician, was of the opinion that the plaintiff's problem was functional.
Following the December 31, 1977, fall, the plaintiff complained of pain in his left hip. X-ray examination on February 24, 1978, disclosed a chip fracture and degenerative arthritis of traumatic origin.
The plaintiff first complained of back pain following the December 1977 fall on April 21, 1978. Dr. Miller noted at that time, "He has a myriad of complaints including pain in the bones of his feet, tingling in his hands, back pain, leg pain, etc." Dr. Miller could find no organic explanation for the plaintiff's symptoms, and concluded, "I think maybe the symptoms he has are secondary to drug dependency."
On July 11, 1978, the plaintiff's spine was X-rayed. The radiologist reported bony overgrowth bridging L4-5 and L5-S1, but no sign of recent injury.
In November 1978 a myelogram examination was made. Both Dr. Rudolph, plaintiff's personal physician, and Dr. Miller, plaintiff's orthopedic specialist, believed this test indicated a disc injury at the level of the third lumbar vertebra.
*737 Dr. Miller's preoperative diagnosis of plaintiff's condition and its relation to the December 1977 fall was as follows: "Mr. Riha has a great deal of functional overlay as noted by previous psychological examination but we do feel he has objective evidence of a disc problem which is recurrent at the 3rd lumbar level. He had a previously existing problem requiring a laminectomy 15 years ago but did well until he was injured in December 1977 and I feel this problem eminates [sic] from that injury. I therefore feel that he had a previously existing problem which was aggravated by the injury in December 1977." (Emphasis supplied.)
On December 29, 1978, the plaintiff again underwent surgery to relieve his condition. The procedure was a decompression, hemilaminectomy at L3-4 level on plaintiff's left side. The operation disclosed, however, that the plaintiff did not have a disc injury but suffered from spinal stenosis, a narrowing of the nerve root canal in the spine, caused by scarring and bony overgrowth and probably caused by his previous surgery.
In January and March of 1979 the plaintiff's complaints of low back pain were dismissed by Dr. Miller as mostly functional.
The plaintiff in a workmen's compensation case must prove by a preponderance of the evidence that his disability is the result of an accident arising out of his employment. Tilghman v. Mills, 169 Neb. 665, 100 N.W.2d 739 (1960). Moreover, the presence of a preexisting disease or condition enhances the degree of proof required to establish that the injury arose out of the employment. Sellens v. Allen Products Co., Inc., 206 Neb. 506, 293 N.W.2d 415 (1980).
Since the plaintiff's injury was not of an objective nature, expert medical testimony was required to establish a causal connection between the December 1977 fall and the claimed aggravation of a previous injury. McCann v. Holy Sepulchre Cemetery Assn., 205 Neb. 444, 288 N.W.2d 45 (1980); Mack v. Dale Electronics, Inc., 209 Neb. 367, 307 N.W.2d 814 (1981). Dr. Rudolph, plaintiff's personal physician, was unable to testify as to a causal connection between the December 1977 fall and plaintiff's recurring back problem. He did testify, however, that spinal stenosis is usually a result of previous surgery.
Although the plaintiff has been examined and treated by many physicians, including neurologists and psychologists, the only medical testimony on causation to support the award to the plaintiff is found in Dr. Miller's December 12, 1978, preoperative diagnosis and a notation Dr. Miller made on January 8, 1980, following a conversation with defendants' attorney. In that notation, Dr. Miller stated: "We were trying to determine whether or not Mr. Riha's problem has eminated [sic] from the injury which he incurred in December 1977 and I do believe in reviewing his records that, although we are referring to `hip' initially it was the same type pain he has been complaining of all along and is related to the injury of December 1977 although he did have back trouble 15 years prior to that and we would have to say that he had previously existing back problems which was aggravated by his injury. He probably is about 50% disabled now from his back problem."
From this evidence, the single judge determined that the plaintiff had sustained his burden of proof on the issue of causal connection. On the rehearing, the parties stipulated to the admission into evidence of exhibit 5, an affidavit of Dr. Miller, dated June 3, 1980. The affidavit states in part: "2. On December 29, 1978, I performed surgery on Raymond J. Riha, of David City, Nebraska. A copy of the Surgical Record dated 12-29-78 is attached hereto and made a part hereof. The postoperative diagnosis contained in that report reflects my present diagnosis of Mr. Riha's problem and supersedes any opinions I have given in reports dated prior to this Affidavit. Said postoperative diagnosis and my present opinion also specifically supersede my notations regarding my conference with Mr. Endacott dated January 8, 1980.
"3. On the basis of what I discovered at the surgery of 12-29-78, Mr. Riha's back *738 problems were secondary to bony overgrowth and scarring that was the result of previous surgery in the same area of his back rather than the accident involving Mr. Riha which occurred in December of 1977. Said previous surgery occurred about sixteen years prior to December of 1977.
"4. Because of my findings as a result of the surgery performed on 12-29-78, I cannot now state with a reasonable degree of medical certainty that Mr. Riha's present medical problems with his back are causally related to his accident in December of 1977." (Emphasis supplied.)
The three-judge compensation court, in evaluating the weight to be placed on the affidavit, stated: "The evidence is in conflict. We do not regard the later affidavit as binding as a matter of law on the issue of causation. Like other evidence, it may be rejected in favor of contrary evidence. That Dr. Miller's apparent change of opinion is not explained and that the affidavit does not meet head on the doctor's earlier conclusion that plaintiff's complaints are related to and aggravated by the injury of December 1977, are circumstances which detract from the weight to be given the affidavit."
As a general rule, where the record presents nothing more than conflicting medical testimony, this court will not substitute its judgment for that of the Workmen's Compensation Court. Keith v. School Dist. No. 1, 205 Neb. 631, 289 N.W.2d 196 (1980); Marion v. American Smelting & Refining Co., 192 Neb. 457, 222 N.W.2d 366 (1974). In the present case, however, the only evidence on the issue of causation comes from a single expert witness. If his final statement is accepted, all conflict is eliminated, as his June 3, 1980, opinion expressly "superseded" all earlier opinions.
The value of an opinion of an expert is no stronger than the facts upon which it is based. Anderson v. Cowger, 158 Neb. 772, 65 N.W.2d 51 (1954). In this respect, it is significant to note that the only opinion to incorporate the postoperative diagnosis as the basis of the opinion was the June 3 affidavit.
The record in this case, when considered as a whole, establishes quite clearly that the cause of the plaintiff's present difficulty is unknown. Dr. Rudolph stated frankly that the cause was unknown. The surgery on December 29, 1978, established that the 1977 fall did not result in a disc injury. The operation which was performed was designed to relieve symptoms caused by the narrowing of the nerve root canal due to scar tissue and bony overgrowth resulting from the previous surgery. Perhaps the operation was not successful. Perhaps the plaintiff's pain has no traumatic origin. The evidence is inconclusive. In the present state of the record the only conclusion that can be drawn is that, as a matter of law, the evidence failed to establish that the plaintiff's disability was caused by the 1977 fall.
The probative value of the 1978 preoperative diagnosis was destroyed by the conditions discovered when the surgery was performed. The affidavit of Dr. Miller effectively destroyed any probative value of his January 8, 1980, statement. See Thelen v. J. C. Penney Co., 186 Neb. 53, 180 N.W.2d 693 (1970). The only other postoperative statements by Dr. Miller were that the plaintiff's pain was functional.
The record does not support the findings of the Workmen's Compensation Court. The judgment must therefore be reversed and the cause remanded with directions to dismiss the petition.
REVERSED AND REMANDED WITH DIRECTIONS.
WHITE, J., dissents.